NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: April 18, 2023

S23Y0225. IN THE MATTER OF JASON LEE VAN DYKE.

PER CURIAM.

This is the third appearance of this disciplinary matter before the Court, following Special Master Daniel S. Reinhardt's rejection of Jason Lee Van Dyke's (State Bar No. 851693) first petition for voluntary discipline, our rejection of his second petition, and our rejection of his third petition and remand to the Special Master for additional fact-finding and to resolve any matters of reciprocal discipline. See *In the Matter of Van Dyke*, 311 Ga. 199 (857 SE2d 194) (2021) ("*Van Dyke I*"); *In the Matter of Van Dyke*, 313 Ga. 53 (867 SE2d 124) (2021) ("*Van Dyke II*"). The State Bar initiated this matter by filing a Bar Rule 4-106 petition for appointment of a special master based on Van Dyke's plea of nolo contendere in a Texas criminal misdemeanor case. The Special Master was

appointed, and Van Dyke filed several petitions for voluntary discipline. In his first and second petitions, Van Dyke sought voluntary discipline in connection with his admitted violation of Rule 8.4 (a) (3)[1] of the Georgia Rules of Professional Conduct ("the Rules" or "the Georgia Rules") found in Bar Rule 4-102 (d), by virtue of his plea of nolo contendere. The Special Master rejected Van Dyke's first petition, and as explained more below, we rejected his second petition and remanded the case for the Special Master to make additional findings of fact as to Van Dyke's conduct during the Texas criminal proceeding and as to whether he was subject to reciprocal discipline in connection with any past or current disciplinary proceedings in other jurisdictions. See *Van Dyke I*, 311

---

[1] Rule 8.4 (a) (3) provides, "It shall be a violation of the Georgia Rules of Professional Conduct for a lawyer to: be convicted of a misdemeanor involving moral turpitude where the underlying conduct relates to the lawyer's fitness to practice law." A plea of nolo contendere constitutes a "conviction" under Rule 8.4 (a) (3). See Rule 8.4 (b) (1) ("conviction" for purposes of Rule 8.4 includes a plea of nolo contendere); see also Rule 8.4 (b) (2) ("[t]he record of a conviction or disposition in any jurisdiction based upon . . . a plea of nolo contendere . . . shall be conclusive evidence of such conviction"). The maximum penalty for a Rule 8.4 (a) (3) violation is disbarment.

Ga. at 203. Before the Special Master could hold a hearing,  Van Dyke filed a third petition, seeking voluntary discipline in connection with his admitted violation of Rule 8.4 (a) (3) and voluntary reciprocal discipline under Rule 9.4[2] based on his discipline in Texas and reciprocal discipline in other jurisdictions where he is licensed to practice law. We rejected the petition and remanded the case for the Special Master to make the factual findings ordered in *Van Dyke I*. See *Van Dyke II*, 313 Ga. at 55.[3]

This matter is now before the Court on the Special Master's Report and Recommendation after a hearing held on May 6, 2022. The Special Master recommends that the Court impose a three-year suspension from the practice of law, nunc pro tunc to March 1, 2019. Neither    party    has    filed    exceptions    to    the    Report    and

---

[2] Rule 9.4 (b) provides that a Georgia lawyer must inform the State Bar's Office of General Counsel upon being suspended or disbarred in another jurisdiction so that the State Disciplinary Review Board can recommend the imposition of substantially similar discipline.

[3] Van Dyke did not file a new petition for voluntary discipline following our rejection of his third petition in *Van Dyke II*.  Thus, only the Bar Rule 4-106 petition was before the Special Master on remand, and that is the only proceeding currently before this Court.

Recommendation. See Bar Rule 4-218. Although a petition for reciprocal discipline was not pending before him, the Special Master engaged in the fact-finding we requested in *Van Dyke I* regarding whether Van Dyke was subject to reciprocal discipline in Georgia in connection with any past or current disciplinary proceedings in other jurisdictions.   As discussed below, the Special Master determined that reciprocal discipline in Georgia would be inappropriate, without fully analyzing the three disciplinary proceedings in Texas in which Van Dyke was sanctioned. The Special Master nonetheless looked to the total length of the suspensions Van Dyke received in those three Texas disciplinary proceedings in formulating his recommendation that Van Dyke receive a three-year suspension in this Georgia disciplinary proceeding.   As explained more below,  we reluctantly accept the Special Master's recommendation and impose a three-year suspension nunc pro tunc to the date Van Dyke stopped practicing law in Georgia.

    1. *Facts*

Regarding the underlying circumstances surrounding Van Dyke's misconduct, this Court has previously recounted as follows:

> Van Dyke, a Texas resident, is licensed to practice law in Texas and several other jurisdictions, including Georgia. In September 2018, Van Dyke called local police to report the theft of several items from his truck. After police interviewed his then-roommate, Van Dyke was arrested for making a false report. Van Dyke contested the charges. By his own admission, Van Dyke violated the conditions of his bond while his charges were pending.[4]
>
> Shortly before trial, the roommate, whom the State had planned to call as a witness, went missing. Contending that Van Dyke had procured the unavailability of the witness, the State filed a motion seeking forfeiture by wrongdoing, which was granted. Van Dyke then agreed to enter a plea of nolo contendere and, on February 26, 2019, Van Dyke entered his plea before the Denton County, Texas Criminal Court Number Five on one count of making a false report to a law enforcement officer. He was sentenced to 24 months' deferred adjudication community supervision, with special conditions.

*Van Dyke I*, 311 Ga. at 200 (footnotes omitted). The State Bar initiated this proceeding under Bar Rule 4-106 and this Court appointed a Special Master. See id. The Special Master rejected Van

---

[4] In *Van Dyke I*, we noted that, "[a]ccording to Van Dyke, he left town in violation of his bond conditions to attend a 'waterfowl hunt' that he had scheduled before his arrest." 311 Ga. at 200 n.1.

Dyke's first petition for voluntary discipline, which requested discipline ranging from a public reprimand to a six-month suspension. See id. In his second petition for voluntary discipline, which was the one at issue in *Van Dyke I*, Van Dyke maintained his innocence as to the underlying criminal charge, asserting that he was prosecuted based on information law enforcement received from an individual who Van Dyke alleged had been stalking, defaming, and harassing him since 2017. See id. at 200-201. In supplemental filings requested by this Court, Van Dyke averred that, as a result of his criminal conviction, he had been suspended from the practice of law in Texas and received reciprocal discipline from other jurisdictions for his Texas suspension. See id. at 201-202. We expressed concern with Van Dyke's conduct in the underlying criminal proceeding and his suspensions in other jurisdictions, which "warrant[ed] additional fact-finding." Id. at 202. Additionally, it appeared that Van Dyke had been suspended by the Texas Bar in a separate proceeding in February 2019, but it was unclear whether he complied with his obligation under Rule 9.4 (b) to inform this

Court of that suspension. See id. at 202-203.  Thus, we rejected Van Dyke's second petition for voluntary discipline and remanded the case for additional fact-finding about Van Dyke's past disciplinary proceedings in other jurisdictions, including his February 2019 suspension in Texas; the violation of his bond conditions in the underlying criminal case; the basis for the forfeiture by wrongdoing determination; and any other matters that the Special Master deemed relevant. See id. at 203.

Before the Special Master could hold a hearing, Van Dyke filed a third petition and amended petition, in which he requested "'discipline in the form of a suspension from the practice of law for no more than thirty-six months nunc pro tunc to March 1, 2019 as a resolution to both the pending proceeding under Rule 4-106 and all matters for which he is subject to reciprocal discipline in Georgia.'" *Van Dyke II*, 313 Ga. at 55. With Van Dyke's consent, the State Bar asked this Court to remand the case for the Special Master to consider the request for reciprocal discipline along with the Bar Rule 4-106 petition. We again rejected the petition and remanded the case

to the Special Master to make factual findings as ordered in *Van Dyke I* and to resolve matters of reciprocal discipline as appropriate. See id.

2. *Report and Recommendation*

Following an evidentiary hearing, the Special Master issued his Report and Recommendation, which contained findings of fact, including specific findings requested by this Court in *Van Dyke I*, and conclusions of law.

At the outset, the Special Master found that Van Dyke violated Rule 8.4 (a) (3) by virtue of his February 26, 2019 plea of nolo contendere in his Texas criminal case. As to Van Dyke's background and legal practice in Georgia, the Special Master found that Van Dyke was admitted to practice law in Texas in 2007 and was admitted to practice in Georgia in 2015. Although he had a private solo practice in Texas, his Georgia practice consisted of his work as general counsel to a credit-repair and debt-settlement company, comprising 2% to 5% of his practice. In his third petition for voluntary discipline and at the hearing, Van Dyke submitted

8

evidence in the form of affidavits from his supervisors at the credit-repair company that he had not represented clients in Georgia since February 28, 2019, and the Special Master credited that evidence in the Report and Recommendation.

a. *Fact-Finding Requested in* Van Dyke I

i. *Texas Disciplinary Incidents*

The Special Master recounted Van Dyke's three disciplinary proceedings in Texas. On December 28, 2018, Van Dyke received a six-month probated suspension from the Texas Bar ("First Texas Incident"), in connection with a civil lawsuit in which he threatened criminal or civil action to gain an advantage in the lawsuit and operated under a conflict of interest with respect to his representation of the client in that lawsuit. On February 21, 2019, Van Dyke received a 12-month partially probated suspension from the Texas Bar ("Second Texas Incident") for making threats of violence to his alleged harasser in March 2018. On April 30, 2020, Van Dyke received an 18-month partially probated suspension from the Texas Bar ("Third Texas Incident") based on his plea of nolo

9

contendere to the criminal charge of making a false report to law enforcement, which is the same charge at issue in the Bar Rule 4-106 disciplinary proceeding before this Court. The Special Master noted that Van Dyke is currently in good standing with the Texas Bar. The Special Master then recounted that Van Dyke received partially probated suspensions in Colorado, the District of Columbia, and the United States District Courts for the Northern and Eastern Districts of Texas, but as of May 6, 2022, he was again in good standing with each of these jurisdictions.

> ii. *Facts Indicating Van Dyke's Apparent Lack of Respect for the Law and Legal Process*

The Special Master then turned to the other fact-finding matters requested by the Court in *Van Dyke I*. The Special Master found that, in connection with Van Dyke's misdemeanor criminal case, the State of Texas moved to hold Van Dyke's bond insufficient on the basis that he had committed additional criminal offenses and threatened to commit future offenses—specifically, by making threats to his alleged harasser by email in September 2018. The

10

Special Master noted that Van Dyke denied sending the September 2018 emails and testified that the emails were the basis for new criminal charges for which he was arrested, but that the charges were no-billed by a grand jury and Van Dyke's arrest on those charges was expunged. The Special Master found no evidence that Van Dyke was convicted of any crime or that disciplinary action was taken against him for the alleged September 2018 email threats against his alleged harasser.

The Special Master noted that Van Dyke failed to attend the hearing on the motion to hold bond insufficient because he chose to go on a hunting trip. When Van Dyke returned, he immediately notified his attorney and arranged to turn himself in to the Denton County, Texas Sheriff's Office. The Special Master noted that the Texas court increased the amount of Van Dyke's bail after he turned himself in, but it was unclear from the record whether bail was increased as a result of the State's motion to hold bond insufficient, Van Dyke's failure to appear for the hearing, or both. The Special

Master found that Van Dyke's failure to attend the hearing was willful.

The Special Master further found that the State of Texas filed a motion for forfeiture by wrongdoing in Van Dyke's criminal case, alleging that Van Dyke had procured the unavailability of a witness the State planned to call in the case. The Texas court granted the motion and ruled that, as a result of his wrongdoing, Van Dyke waived his right to confront the witness and to object to the admissibility of statements made by the witness. The Special Master noted that Van Dyke admitted that the Texas court concluded that he procured the unavailability of the witness but that Van Dyke denied that he did so. The Special Master found this incident was part of a pattern of misconduct showing Van Dyke's lack of respect for the law and legal process.

The Special Master then turned back to the issue of reciprocal discipline. First, the Special Master found that Van Dyke's conduct underlying the First and Second Texas Incidents indicated a lack of respect for the law and legal process. As to the First Texas Incident,

Van Dyke admitted to making threats in order to gain an advantage in a civil lawsuit[5]; as to the Second Texas Incident, Van Dyke admitted that in March 2018, he made threats to a person he understood at the time to be his alleged harasser. The Special Master accepted Van Dyke's stipulation that he timely notified the State Bar of the Second Texas Incident. However, the Special Master concluded that Van Dyke was not subject to discipline in Georgia for the Second Texas Incident. In this regard, the Special Master compared Georgia Rules 8.4 (a) (2) and (3), which require either a felony or misdemeanor criminal conviction in order to impose discipline, with Texas Rule of Professional Conduct 8.04 (a) (2), which permits discipline for criminal acts that do not result in

---

[5] The Special Master made no finding about whether Van Dyke was subject to reciprocal discipline in Georgia for the First Texas Incident.

convictions.[6] Citing Comment [3] to Rule 9.4,[7] the Special Master ultimately concluded that reciprocal discipline in Georgia based on the other out-of-state discipline against Van Dyke would be duplicative and inappropriate.

  b. *Mitigating Facts Regarding Van Dyke's Demonstrated Lack of Respect for the Law*[8]

In connection with the fact-finding ordered in *Van Dyke I*, the Special Master found that several facts specifically mitigated Van Dyke's demonstrated lack of respect for the law: The misconduct was limited to a one-year period of time from fall 2017, when Van Dyke

---

  [6] We note, however, that the Special Master made no finding about whether Van Dyke was subject to reciprocal discipline for the Second Texas Incident under Georgia Rule 8.4 (a) (8), which provides that it is a violation of the Georgia Rules for a lawyer "to commit a criminal act that relates to the lawyer's fitness to practice law or reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer, where the lawyer has admitted in judicio, the commission of such act," even though Van Dyke stipulated in his third petition and at the hearing that he was "potentially" subject to discipline under that Rule.

  [7] Comment [3] to Rule 9.4 states that the imposition of discipline in one jurisdiction does not mean that Georgia and every other jurisdiction in which the lawyer is admitted must necessarily impose discipline.

  [8] We note that the Special Master included this section within the "fact-finding" section of his Report and Recommendation; in a separate section entitled "recommendation of discipline," he discussed mitigating factors in the context of the ABA Standards for Imposing Lawyer Discipline.

threatened civil or criminal action to gain an advantage in a civil lawsuit and had a conflict of interest with respect to representing his client in that lawsuit, through September 13, 2018, when he made the false report to the police that formed the basis for his misdemeanor charge; he was suffering from emotional distress during that time due to harassment from his alleged harasser,[9] who has since passed away; Van Dyke successfully completed counseling as a condition of his criminal probation; and he expressed remorse for his misconduct. The Special Master found that Van Dyke's emotional problems and completion of counseling were mitigating with respect to the threats he made to gain an advantage in a civil lawsuit which formed the basis of the First Texas Incident; the threats he made which formed the basis of the Second Texas

---

[9] The Special Master found that Van Dyke's testimony regarding his alleged harasser's harassment was bolstered by letters and affidavits from Van Dyke's colleagues and former employers, whom his alleged harasser had apparently harassed as well. Additionally, the Special Master stated that Van Dyke's alleged harasser sent the Special Master communications which were "strident and in at least one instance profane" during this disciplinary proceeding. Thus, the Special Master found that, based on his personal experience with the alleged harasser, that person was "harassing and out of control."

Incident; and his willful failure to attend the bond hearing. However, the Special Master determined that Van Dyke's emotional problems and treatment were not mitigating as to the conflict of interest violation which was another basis for the First Texas Incident, and they were not mitigating as to the Texas court's finding that Van Dyke procured the unavailability of a witness because he denied doing so.[10]

c. *Special Master's Conclusions of Law and Recommendation of Discipline*

The Special Master issued the following conclusions of law. In regard to Rule 8.4 (a) (3), it is a violation of the Rules for a lawyer to be convicted of a misdemeanor involving moral turpitude where the underlying conduct relates to the lawyer's fitness to practice law. Van Dyke entered a plea of nolo contendere to a misdemeanor count of filing a false police report, which is a crime involving dishonesty

---

[10] It is unclear why the Special Master considered mitigating evidence as to Van Dyke's conduct underlying the First and Second Texas Incidents, even though he had made no findings as to whether Van Dyke was subject to reciprocal discipline for the First Texas Incident and had already decided that Van Dyke was not subject to reciprocal discipline in Georgia for the Second Texas Incident.

and moral turpitude, and relates to his fitness to practice law. *See*
*In the Matter of Nicholson*, 243 Ga. 803, 807 (257 SE2d 195) (1979)
(equating dishonesty with moral turpitude); Rule 8.4, cmt. [3]
(crimes involving dishonesty relate to lawyer's ability to practice
law). At the hearing, the Special Master admitted into evidence a
certified copy of Van Dyke's plea of nolo contendere in his Texas
criminal case without objection.[11] Thus, the Special Master
concluded that the State Bar proved, by clear and convincing
evidence, that Van Dyke violated Rule 8.4 (a) (3) by entering a plea
of nolo contendere to a criminal misdemeanor charge.

The Special Master concluded that the primary purpose of a
disciplinary action is to protect the public from attorneys who are
not qualified to practice law due to incompetence or unprofessional
conduct. *In the Matter of Blitch*, 288 Ga. 690, 692 (706 SE2d 461)
(2011). The Special Master looked to the ABA Standards for
Imposing Lawyer Discipline ("ABA Standards") for guidance in

---

[11] A certified copy of a conviction from any jurisdiction is prima facie
evidence of a violation of Rule 8.4. See Rule 4-106 (g).

determining the appropriate sanction to impose on a lawyer for a violation of the Rules, see *In the Matter of Morse*, 266 Ga. 652, 653 (470 SE2d 232) (1996), which require (1) identification of the ethical duty violated by the lawyer; (2) identification of the lawyer's mental state; and (3) examination of aggravating and mitigating circumstances. Id.; ABA Standards, p. xvii.

The Special Master found that ABA Standard 5.11 (b)[12] applied to Van Dyke because he entered a plea of nolo contendere to a criminal misdemeanor charge. The Special Master then considered aggravating and mitigating factors. In aggravation, the Special Master found that Van Dyke engaged in a pattern of misconduct indicating a lack of respect for the law, see ABA Standard 9.22 (c); and that he had been practicing law for at least 10 years at the time of his misconduct, see ABA Standard 9.22 (i). In mitigation, the Special Master considered Van Dyke's emotional problems arising

---

[12] ABA Standard 5.11 (b) states: "Disbarment is generally appropriate when: (b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice."

from his issues with his alleged harasser, see ABA Standard 9.32
(b), again noting that they were mitigating as to some of Van Dyke's
misconduct but not all of it, and that Van Dyke had completed a
counseling program and was pronounced fit to return to the practice
of law by a licensed therapist. Also in mitigation, the Special Master
considered Van Dyke's cooperative attitude toward this disciplinary
proceeding, see ABA Standard 9.32 (e); letters from his colleagues
and therapist vouching for his good character and reputation, see
ABA Standard 9.32 (g); his remorse, see ABA Standard 9.32 (l); that
the underlying criminal charge involved a purely personal issue and
not the practice of law, see *In the Matter of Haugabrook*, 278 Ga. 721
(606 SE2d 257) (2004) (one-year suspension and public reprimand
imposed on lawyer convicted of felony tax evasion); and that he made
a timely, good-faith effort to rectify the consequences of his
misconduct, see ABA Standard 9.32 (d).

The Special Master concluded that although the Court has
imposed disbarment in cases where a lawyer engages in criminal
conduct involving fraud, deceit, or false swearing, see *In the Matter*

19

*of Skandalakis*, 279 Ga. 865 (621 SE2d 750) (2005), disbarment is not mandatory in cases involving dishonesty and moral turpitude when mitigating factors warrant a lesser penalty. See *Haugabrook*, 278 Ga. at 721. The Special Master noted that the Court has also imposed suspension instead of disbarment in cases involving both dishonesty and interference with the administration of justice. See *In the Matter of Wright*, 291 Ga. 841 (732 SE2d 275) (2012) (six-month suspension and public reprimand where lawyer made false statements to the Georgia Court of Appeals and refused to take responsibility for misconduct); *In the Matter of Moore*, 300 Ga. 407 (792 SE2d 324) (2016) (one-year suspension for attorney who made false statements in certificates of service and misrepresented communications with district attorney).

The Special Master found that a lengthy suspension, rather than disbarment, was the appropriate penalty due to the numerous mitigating factors listed above. Thus, for Van Dyke's violation of Rule 8.4 (a) (3) as laid out in the Bar Rule 4-106 disciplinary matter, the Special Master recommended that he be suspended for three

years, noting that this was equal to "[t]he total sum of all suspensions, active or probated, [Van Dyke] received in Texas." Both Van Dyke and the State Bar agreed this sanction was appropriate. The Special Master further found that it would be appropriate for the suspension to be imposed nunc pro tunc to March 1, 2019, because Van Dyke offered evidence in the form of affidavits from his supervisors at the company for which he represented Georgia clients that he ceased practicing law in Georgia on February 28, 2019, and that he fulfilled his ethical obligations to his Georgia clients by finding new general counsel to represent them and ensuring their files and critical information were transferred to the new general counsel. See *In the Matter of Onipede*, 288 Ga. 156, 157 (702 SE2d 126) (2010).

3. *Analysis*

Having reviewed the record, we conclude that the Special Master's recommendation of a three-year suspension is an appropriate penalty in this case. We note, however, that although the Special Master declined to impose reciprocal discipline for the

Second Texas Incident and concluded that reciprocal discipline "based upon the remaining out-of-state discipline against [Van Dyke] would be duplicative and inappropriate," he based his recommendation of a three-year suspension for Van Dyke's Bar Rule 4-106 proceeding on the total length of time for which Van Dyke was suspended for his three Texas disciplinary cases proceedings. The State Bar endorsed the Special Master's recommended discipline and did not point out any of the potential deficiencies we identified in footnotes 5, 6, and 10 as to the Special Master's findings regarding Van Dyke's potential exposure to reciprocal discipline in Georgia for the Texas Incidents. Moreover, the State Bar has not initiated any separate proceedings alleging that Van Dyke violated the Rules through his conduct connected with his Texas criminal misdemeanor case, including his failure to attend the bond hearing, making additional email threats, and the Texas court's forfeiture by wrongdoing determination. Nevertheless, the three-year suspension sought by Van Dyke, endorsed by the State Bar, and recommended by the Special Master is equal to the suspensions imposed in Van

Dyke's three Texas Incidents, and we generally impose substantially similar discipline in the reciprocal discipline context. See *In the Matter of Meaney*, 298 Ga. 136 (779 SE2d 662) (2015) (suspending attorney for three months following the receipt of a three-month suspension in Tennessee).

Although we have misgivings about Van Dyke's conduct with respect to the proceedings in his Texas criminal case, based on the Special Master's findings, the nature of reciprocal discipline matters—which the Special Master looked to for guidance in engaging in the fact-finding we requested in *Van Dyke I* and in formulating his ultimate recommendation—wherein this Court must only impose "substantially similar" discipline, see Rule 9.4 (b) (3), and the Bar's failure to charge additional violations of the Rules, we hereby accept the Special Master's recommendation and impose a three-year suspension, which is generally the maximum amount of time this Court will consider for a suspension. See ABA Standard 2.3 ("Generally, suspension should be for a period of time equal to or

greater than six months, but in no event should the time period prior to application for reinstatement be more than three years.").

Furthermore, as the record shows that Van Dyke provided evidence that he voluntarily ceased the practice of law as of February 28, 2019, we accept the Special Master's recommendation to impose Van Dyke's three-year suspension nunc pro tunc to that date. See *Onipede*, 288 Ga. at 157. Van Dyke is also hereby reinstated, given that his three-year suspension would be completed by the date on which this opinion will be issued.

*Three-year suspension nunc pro tunc; reinstated. All the Justices concur.*